IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOHN DOE, | ) |
|     Petitioner | ) ) ) |
| v. | ) Civil Action No. 7:23cv00274 |
| RADFORD UNIVERSITY, | ) ) ) |
| and | ) ) |
| Dr. Andrea Zuschin, Title IX Coordinator for Radford University | ) ) ) |
|     Respondents. | ) ) |

**COMPLAINT FOR INJUNCTIVE RELIEF WITH SUPPORTING AUTHORITY**

COMES NOW Petitioner John Doe, by counsel, and, for the reasons set forth herein, moves this Court to enjoin and order Respondents Radford University and its Title IX Coordinator Dr. Andrea Zuschin to conduct a live, in-person hearing in Petitioner's Title IX proceeding.

**INTRODUCTION**

1.  John Doe,[1] a student at Radford University, is accused of violating Title IX of the Education Amendments of 1972 ("Title IX") with regard to his interaction in August 2021 with a female classmate (*hereinafter*, "Jane Doe") during the early weeks of their freshman year.

2.  Respondents have scheduled a formal hearing in the Title IX proceeding to occur on May 19, 2023, via remote/livestream means, *e.g.,* via Zoom.

---

[1] Given the confidential nature of Title IX proceedings, Petitioner is identified herein by the pseudonym "John Doe" or "John," and the complaining witness in the Title IX proceeding will be referred to herein as "Jane Roe" or "Jane."

3. Respondents have denied Doe's request for a live in-person hearing: the Decision Maker is scheduled to be in Ohio, and the Parties will appear via livestream video from wherever they might be geographically at the time of the hearing.

4. In this Title IX proceeding the credibility of the Complaining Witness and Respondent are paramount to the determination of Respondent's liability.

5. Moreover, the potential consequences to Doe in the proceeding are severe.

6. The Decision Maker's ability, therefore, to effectively perceive and evaluate the demeanor and credibility of the Complaining Witness and Respondent is paramount.

7. Therefore, any hearing other than a live, in-person hearing denies the Respondent his constitutional the right to confront the witness(es) against him, especially under these circumstances where credibility of the witnesses will be at the core of the Decision Maker's determination.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as it alleges violation of a right secured by the Constitution of the United States and the Amendments thereto via 42 U.S.C. § 1983.

9. Venue is proper in the United States District Court for Western District of Virginia, pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## FACTS

10. The prior paragraphs are re-alleged herein as if fully set forth.

11. Respondent Radford University is a public, post-secondary educational institution of the Commonwealth of Virginia that accepts Title IX funding.

12. Acceptance of Title IX funding constitutes a waiver of 11th Amendment immunity. *See Litman v. George Mason Univ.*, 186 F.3d 544, 554 (4th Cir. 1999); *and Doe v. Va. Polytechnic Inst. & State Univ.*, 2020 U.S. Dist. LEXIS 44754, fn. 3 (W.D. Va. Mar. 19, 2020).

13. Dr. Andrea Zuschin is an employee and agent of Radford University, serving in the position of Title IX Coordinator for RU.

14. Jane Roe, the Complaining Witness, is female and a student at Radford University. Title IX Investigative Report at 1, 5.

15. On October 24, 2022, RU student Jane Roe first "alleged sexual assault" committed by John on August 26, 2021 (nearly 124 months earlier). *Id.* at 1 and 3.

16. After intake occurred, Respondents issued a no contact order prohibiting John from having contact with Jane.

17. Jane submitted a formal complaint on November 7, 2022.[2] *Id.* at 3.

18. On August 26, 2021, John and Jane engaged in sexual intercourse in John's dormitory room, after meeting and talking for a few days. *Id.* at 5-6.

19. The next day Jane attended a club fair, where she took photographs of John for one of his classes: after taking the photographs of John, she hugged him and then left, indicating that she had to leave to tutor students in piano. *Id.* at 7-8.

20. The day after that, August 28, 2021, Jane broke up with John, stating "I don't want to do this anymore. I'm not over my last relationship." *Id.* at 8.

---

[2] "Formal investigation" means an investigation conducted by the Title IX Coordinator into allegations that discrimination or harassment occurred." Radford University, *Discrimination and Harassment Policy* at 3, https://www.radford.edu/content/dam/departments/administrative/policies/GeneralPoliciesandProcedures/GEN-PO-1002_DiscriminationandHarassmentPolicy.pdf, last visited May 16, 2023 at 12:18 AM.

21. Jane now complains the intercourse was not consensual that occurred on August 26, 2021: John denies that the intercourse lacked consent.

22. No one else was present when the intercourse occurred.

23. Witnesses at the hearing likely will consistent of John, Jane, and two (2) witnesses.

   a. Witness 1 is a friend of Jane to whose room John walked Jane upon leaving John's room the night of August 26, 2021, and with whom Jane discussed, in vague terms, what had occurred with John on the night of August 26, 2021. *Id.* at 10-11.

   b. Witness 2 also is a friend of Jane with whom Jane discussed between the months of June and July 2022 what occurred on August 26, 2021. *Id.* at 12.

24. These witness statements contain facts inconsistent with the other and with the Complaining Witness' statement(s). *Id.* at 5-12.

25. No evidence exists of what occurred in John's dormitory room on August 26, 2021, to corroborate Jane's or John's statements about whether the intercourse was consensual.

26. John's advocate/counsel in the Title IX proceeding requested that the hearing be conducted live, in-person, stating,

> As the Final Title XI report demonstrates, this case is likely to be resolved by determining the credibility of the participants, especially as there seems to be no evidence other than the testimony of the witnesses. The use of a virtual hearing is a cumbersome process and does not allow for, in a sufficient sense, the fact finder to fairly evaluate witness demeanor. Only in a face-to-face hearing can credibility issues related to demeanor be sufficiently observed, such as witness appearance, behavior during the hearing, manner and tone of voice, grimaces, and gestures, which do demonstrate sincerity or the lack thereof, irony, and sarcasm. In many cases, a witness's demeanor reveals the truth or falsity of a claim. A virtual hearing is insufficient for determining the credibility of a witness, and, as such, in this specific type of case that rests on witness credibility, the respondent requests a live hearing for the parties to meet face-to-face in front of the fact-finder.

April 18, 2023, letter to Radford University from Doe's counsel.

27. Respondents have denied John's request for a live, in-person hearing.

28. 34 C.F.R. § 106.45(b)(6)(i) requires a "live hearing":

<u>For postsecondary institutions, the recipient's grievance process must provide for a live hearing. At the live hearing, the decision-maker(s) must permit each party's advisor to ask the other party and any witnesses all relevant questions and follow-up questions, including those challenging credibility. Such cross-examination at the live hearing must be conducted directly, orally, and in real time by the party's advisor of choice</u> and never by a party personally … At the request of either party, the recipient must provide for the live hearing to occur with the parties located in separate rooms with technology enabling the decision-maker(s) and parties to simultaneously see and hear the party or the witness answering questions. [] If a party or witness does not submit to cross-examination at the live hearing, the decision-maker(s) must not rely on any statement of that party or witness in reaching a determination regarding responsibility; provided, however, that the decision-maker(s) cannot draw an inference about the determination regarding responsibility based solely on a party's or witness's absence from the live hearing or refusal to answer cross-examination or other questions. Live hearings pursuant to this paragraph may be conducted with all parties physically present in the same geographic location or, at the recipient's discretion, any or all parties, witnesses, and other participants may appear at the live hearing virtually, with technology enabling participants simultaneously to see and hear each other. Recipients must create an audio or audiovisual recording, or transcript, of any live hearing and make it available to the parties for inspection and review.

34 C.F.R. § 106.45(b)(6)(i) (<u>emphasis added</u>); *also see Doe v. Bd. of Supervisors*, No. 21-564-SDD-SDJ, 2022 U.S. Dist. LEXIS 200191, at *16 n.56 (M.D. La. Nov. 3, 2022)

29. RU's Discrimination and Harassment Policy echoes 34 C.F.R. § 106.45(b)(6)(i):

Live hearings may be conducted with all parties physically present in the same geographic location or, at Radford University's discretion, any or all parties, witnesses, and other participants may appear at the live hearing virtually, with technology enabling participants to simultaneously see and hear each other. At the request of either party, Radford University will provide for the live hearing to occur with the parties located in separate rooms with the technology enabling the Decision Maker and parties to simultaneously see and hear the other party or the witness answering questions.

Radford University Discrimination and Harassment Policy (Policy No. GEN-PO-1002)

(5)(C)(9)(b)(viii)(e),

https://www.radford.edu/content/dam/departments/administrative/policies/GeneralPoliciesandPro

cedures/GEN-PO-1002_DiscriminationandHarassmentPolicy.pdf, last visited May 16, 2023, at 2:10 AM.

30. The Policy and other RU policies create a property interest in continued enrollment for John whereby RU agreed to permit John to continue as a student and confer a degree upon him, and agreed not to discipline him (to include suspension, expulsion, and/or dismissal) except upon allegations of misconduct proven true through fair and reasonable processes, pursuant to its policies, for example:

a. "Assure students a fundamentally fair opportunity to resolve allegations when they have been accused of violating the Standards." RU Policy No. SA-PO-1300(1)(C)(2), https://www.radford.edu/content/dam/departments/administrative/policies/StudentAffairsPoliciesandProcedures/SA-PO-1300_StandardsofStudentConduct.pdf, last visited May 16, 2023, at 2:04 AM.

b. "If it is determined that conduct in violation of this Policy has occurred, sanctions and remedies will depend on the facts and circumstances of each particular situation, the frequency and severity of the offense, institutional precedence, and any history of past conduct." Policy No. GEN-PO-1002(5)(D)(1).

c. "The purpose of the Discrimination and Harassment Policy, hereafter "Policy," is to establish clearly and unequivocally that Radford University prohibits discrimination harassment and retaliation by individuals subject to its control or supervision and to set forth procedures by which such allegations shall be filed, investigated, and adjudicated." Policy No. GEN-PO-1002(1)(B).

31. Upon information and belief, RU has never dismissed, suspended, expelled, or separated an undergraduate student (like John Doe) for alleged misconduct without proving that the student violated an RU policy in a fair and impartial process.

## AUTHORITIES

32. The prior paragraphs are re-alleged herein as if fully set forth.

33. John Doe seeks a preliminary and permanent injunction to prevent Respondents from depriving him of his right to confront the witnesses against him in a live, in-person hearing, especially where the determination of his liability and the severe sanctions that may issue therefrom rely almost exclusively on the credibility of the Complaining witness and Respondent.

**I.      Standard for Injunction.**

34. The party seeking the preliminary injunction must make a showing "[1] that he is likely to succeed on the merits; [2] he is likely to suffer irreparable harm in the absence of preliminary relief; [3] that the balance of equities tips in his favor; and [4] an injunction is in the public interest." *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342-346-47 (4th Cir. 2009), *vacated on other grounds by* 559 U.S. 1089 (2010), *reinstated in relevant part by* 607 F.3d 355, 355 (4th Cir. 2010) (*quoting Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)).

   **A.   Likelihood to succeed on the merits.**

35. John Doe asserts that Respondents' denial of his request to conduct a live, in - person hearing violates his right to confrontation, guaranteed by the Constitution of the United States and its Amendments.

36. Doe may suffer sanction up to and including expulsion from RU if found liable for sexually assaulting Jane.

37. A student respondent in a Title IX proceeding has a compelling interest in preserving his "educational status and reputations in the face of serious sexual misconduct charges" *Plummer v. Univ. of Hous.*, 860 F.3d 767, 782 (5th Cir. 2017), *citing Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976).

> 38. In the context of a disciplinary proceeding at a public university, the accused is also entitled to procedural due process. *Goss v. Lopez*, 419 U.S. 565, 579, 95 S. Ct. 729, 42 L. Ed. 2d 725 (1975); *see Doe v. Cummins*, 662 F. App'x 437, 445 (6th Cir. 2016); *Flaim v. Med. Coll. of Ohio*, 418 F.3d 629, 633 (6th Cir. 2005); *see also U.S. Dep't of Educ., Office for Civ. Rights, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties* (Jan. 19, 2001), https://www2.ed.gov/about/offices/list/ocr/docs/shguide.html ("The Constitution also guarantees due process to students in public and State-supported schools who are accused of certain types of infractions. The rights established under Title IX must be interpreted consistent with any federally guaranteed due process rights involved in a complaint proceeding."). Therefore, when a student faces possible suspension, the student must receive "advance notice of the charges, a fair opportunity to be heard, and an impartial decision-maker." *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983); *see also Butler v. Rector & Bd. of Visitors of the Coll. of William & Mary*, 121 F. App'x. 515, 519-20 (4th Cir. 2005). But, in "the academic setting particularly, the Supreme Court has recognized that the requirements of due process may be satisfied by something less than a trial-like proceeding." *Henson*, 719 F.2d at 74 (citing Goss, 419 U.S. 565, 95 S. Ct. 729, 42 L. Ed. 2d 725); *Cummins*, 662 F. App'x at 446 ("Although a university student must be afforded a meaningful opportunity to present his side, a full-scale adversarial proceeding is not required.").

*Doe v. Loyola Univ. Md.*, Civil Action No. ELH-20-1227, 2021 U.S. Dist. LEXIS 59687, at *60-61 (D. Md. Mar. 29, 2021)

> 39. [T]his court and others have recognized that <u>an accused student has a right to confront his or her accuser</u>, it is equally true that courts have recognized that this right is not unyielding because universities may "have a legitimate interest in avoiding procedures that may subject an alleged victim to further harm or harassment." *Doe v. Baum*, 903 F.3d 575, 583 (6th Cir. 2018). Indeed, "the Fourth Circuit has not found 'a basis in law' for 'importing' the right to cross-examination 'into the academic context." *Doe 2*, 384 F. Supp. 3d at 612 (*quoting Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 520 (4th Cir. 2005)).

*Doe v. Citadel*, No. 2:21-cv-04198-DCN, 2022 U.S. Dist. LEXIS 127707, at *22 (D.S.C. July 18, 2022) (<u>emphasis added</u>).

40. While a student's right to confront witnesses in a Title IX proceeding arises out of the right to due process under the Fourteenth Amendment, the contours of the right to confrontation pursuant to the Sixth Amendment are instructive: "If a litigant asserts the right in court to 'be confronted with the witnesses against him,' U. S. Const., Amdt. 6, we require courts to consult history to determine the scope of that right." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2130 (2022), *quoting e.g., Giles v. California*, 554 U. S. 353, 358, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008) ("admitting only those exceptions [to the Confrontation Clause] established at the time of the founding" (internal quotation marks omitted)).

41. "The purpose of cross-examination is to ensure that issues of credibility and truthfulness are made clear to the decision makers. Given the importance of credibility in this Hearing, … , the Court considers this an important safeguard." *Furey v. Temple Univ.*, 884 F. Supp. 2d 223, 252 (E.D. Pa. 2012); *also see* Doe v. Pa. State Univ., 276 F. Supp. 3d 300, 309 (M.D. Pa. 2017).

42. Given that <u>the original public meaning of the Confrontation Clause included, generally, a right to in person, face-to-face confrontation of witness</u>, it would be inappropriate to deny [Defendant] this right unless a recognized exception to the right justified doing so. <u>This conclusion remains true regardless of how similar video conferencing is to live testimony. If it cannot preserve the core of the right protected by the Confrontation Clause, it is inadequate.</u>

*United States v. Rivera*, 372 F. Supp. 3d 311, 314-15 (E.D.N.C. 2019) (<u>emphasis added</u>) (in criminal case context).

43. "Although the requirement for in person testimony 'may [not] easily be dispensed with[,]' courts may excuse a witness from testifying in person only where the witnesses' absence is 'necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.'" *Id.*, 372 F. Supp. 3d at 315-16, *quoting Maryland v. Craig*, 497 U.S. 836, 850, 110 S.Ct. 3157 (1990).

44.     *Craig* held the Confrontation Clause was met through the use of one-way closed circuit television for the testimony of a 6-year-old witness in a child sexual abuse prosecution because the elements of "'physical presence [of the witness], oath, cross-examination, and observation of demeanor by the trier of fact'" were observed. *Rivera*, 372 F. Supp. 3d at 315, *quoting Craig*, 497 U.S. at 846.

45.     "[O]ur precedents confirm that a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial <u>only where denial of such confrontation is necessary to further an important public policy</u>[, *i.e.,* a "compelling" interest (*Craig*, 497 U.S. at 852 (*cites omitted*)] <u>and only where the reliability of the testimony is otherwise assured.</u>" *Craig*, 497 U.S. at 850 (<u>emphasis added</u>).

46.     No justifiable exception exists here to deprive John of his constitutional right to confront Jane in-person:

   a.     Jane is not a young child, and the risk of emotional harm to her does not outweigh the compelling interest to afford John his constitutional rights. *Plummer v. Univ. of Hous.*, 860 F.3d 767, 782 (5th Cir. 2017), *citing Mathews v. Eld*ridge, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976).

   b.     Any reliance on COVID-19 and associated emergency measures in place thereby expired on May 11, 2023. *See* https://www.whitehouse.gov/wp-content/uploads/2023/01/SAP-H.R.-382-H.J.-Res.-7.pdf.

47.     Respondents are already required to afford John a live hearing and the opportunity to cross-examine the witnesses against him. 34 C.F.R. § 106.45(b)(6)(i).

48.     John seeks here only the additional aspect of due process of being able to cross-examine the witnesses against him in-person, in a live hearing, with the fact finder present along

with his counsel and the witnesses, to enable the fact finder to properly perceive and evaluate the demeanor or witnesses while under cross-examination.

49. While the use of Zoom or other livestream media became commonplace during the COVID-19 pandemic, the return to tried and true aspects of due process should occur now that the emergency caused by the pandemic has subsided, especially in a case such as this where the credibility of the witnesses is the sole basis upon which the Decision Maker will have to rely to decide liability.

**B. John will suffer irreparable harm.**

50. Under Fourth Circuit precedent, the Petitioner must first make a strong showing of irreparable harm, and then the Court will balance the hardships that would result to both [Petitioner and Respondent]. *See Scotts Co. v United Indus. Corp.*, 315 F.3d 264, 271 (4th Cir. 2002).

51. If John is denied the right to an in-person, live hearing here, then the harm to him will be irreparable: he will be denied due process in the adjudicated of a proceeding with severe consequences to him.

52. The trier of fact is entitled to great deference in assessing the credibility of witnesses and weighing the evidence, and may take into consideration the demeanor of any and all witnesses.

53. "Demeanor includes the language of the entire body [and] [...] how the witnesses move when they answer a question; how the witnesses hesitate; how fast the witnesses speak[; ... whether] they blink or roll their eyes, make furtive glances, and tilt their heads [...]." *United States v. Clemons*, 2020 U.S. Dist. LEXIS 206221, *7 (D. Md. Nov. 4, 2020). (holding that the Court's modifications during the COVID-19 pandemic, *i.e.*, permitting in-person witnesses to

wear masks, do not infringe upon the Defendant's constitutional right to a speedy and fair trial as the trier of fact is otherwise capable of assessing the demeanor of witnesses).

54. For the Decision Maker to adequately assess the witnesses' demeanor, he must be given an opportunity to assess the witnesses from head to toe: remote hearing will not allow the Decision Maker such an opportunity.[3]

55. Additionally, the presentation of evidence, particularly when having to show witnesses documents, will also suffer should John and his counsel be required to defend this matter remotely: Many documents exist pertaining to this matter, *i.e.*, statements taken by the parties and witnesses, a police report, emails, and a preliminary protective order, which will likely be employed as exhibits when cross-examining witnesses.

**C. Balance of Hardships.**

56. In considering whether to grant the requested preliminary injunction, the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 30 (*citing Amoco Production Co.*, 480 U.S. 531, 542, 107 S. Ct. 1396 (1987)); *Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Engineers*, 890 F. Supp. 2d 688, 694-95 (S.D.W. Va. 2012) ("The Court must compare the harm to Plaintiffs in not granting an injunction to the harm caused to Defendants if an injunction is granted; an injunction can only be granted if the former outweighs the latter.").

57. Here, the balance of equities favors granting the preliminary injunction.

58. The education of John and freedom to move his person about without restriction are important and valid interests.

---

[3] A remote hearing would also interfere with John's counsel's ability to fully assess the demeanor of witnesses called, and to bring attention to any specific behavior by the witnesses, if appropriate.

59. The outcome of the formal hearing could result in disciplinary action, up to and including expulsion, and the no contact order in place could remain in place for a significant period of time, *i.e.*, until October 24, 2029.[4]

60. To allow Petitioner and his counsel as well as the Decision Maker the opportunity to sufficiently and fully observe Jane's demeanor and the demeanor of adverse witnesses during the hearing is of the utmost importance: the outcome of this matter will turn on the credibility of the witnesses.

61. Moreover, the parties, witnesses, and school officials involved in the investigation are located, at least during the academic year, in Radford, Virginia: only the Decision Maker would be required to travel for the hearing.

62. Furthermore, no circumstances exist, to the best of Petitioner's knowledge, necessitating a remote hearing, *i.e.*, COVID-19 or health issues of any of the participants. Courts in Virginia, to include this Court, have largely resumed in-person hearings.

63. Accordingly, the harm to Petitioner in not granting an injunction outweighs the harm to Respondent in granting an injunction.

**D. The Public Interest.**

64. In the exercise of sound discretion with regard to whether to grant a preliminary injunction, "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 30 (*citing Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311-12, 102 S. Ct. 1798 (1982)).

---

[4] The no contact order could remain in place well after John and Jane are scheduled to graduate from RU.

65. Petitioner cannot conceive any harm to the public by allowing the formal hearing to take place live, in-person at Radford University.

66. While there are certainly public interests in maintaining the safety of other students and faculty and ensuring the proper educational environment for students and faculty at a university, this is not a case where Petitioner has been banned from the school, or otherwise poses a danger to the public.

67. The parties and witnesses to the hearing still attend RU.

68. Accordingly, no impact on the public will occur by requiring the formal hearing to take place in person on RU's campus.

## CONCLUSION

WHEREFORE, Petitioner John Doe respectfully prays for preliminary and permanent injunctive relief against Respondents, and requests that this Court order that the formal hearing for the Title IX matter involving Mr. Doe be conducted in person at Radford University on a date mutually agreed to by the parties.

Respectfully submitted,
JOHN DOE

*/s/ Melvin E. Williams*
Of Counsel

Melvin E. Williams (VSB No. 43305)
   mel@williamsstrickler.com
Meghan A. Strickler (VSB No. 88556)
   meghan@williamsstrickler.com
WILLIAMS & STRICKLER, PLC
1320 Third Street, SW
Roanoke, Virginia 24016
(540) 266-7800
(540) 206-3857 *facsimile*
   *Counsel for Petitioner John Doe*