**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Roanoke Division**

| | | |
|---|---|---|
| **JOHN DOE,** | ) | |
| **Petitioner** | ) | |
| | ) | |
| **v.** | ) | **Case No. 7:23-cv-00274-RSB** |
| | ) | |
| **RADFORD UNIVERSITY,** *et al.*, | ) | |
| **Respondents.** | ) | |

**PETITIONER JOHN DOE'S MEMORANDUM IN**
**OPPOSITION TO RESPONDENTS' MOTION TO DISMISS**

Petitioner John Doe (*hereinafter* "Petitioner"), by counsel, hereby submits his
Memorandum in Opposition to Respondents' Motion to Dismiss Pursuant to Rule 12(b)(1) and
Rule 12(b)(6) (ECF No. 6) and Memorandum in support thereof (ECF No. 7) (*hereinafter*
"Memorandum"). For the reasons set forth herein, the Court should deny Respondents' Motion.

## INTRODUCTION

Petitioner seeks prospective, injunctive relief in the form of an order requiring
Respondents Radford University (*hereinafter* "RU") and/or Dr. Andrea Zuschin (*hereinafter*
"Zuschin") (*hereinafter and collectively*, "Respondents") to conduct the formal hearing on a
Title IX investigation live and in-person as opposed to a remote videoconferencing/virtual
hearing.  Petitioner maintains Respondents failure to provide for a live and "in-person" hearing
whereby all participants are located in the same geographic area not only is violative of RU's
discretion as the recipient of federal funds pursuant to 34 C.F.R. 106.45(b)(6)(i), but, more
importantly, violates the protections afforded him by the confrontation clause of the Sixth
Amendment and his right to due process under the Fourteenth Amendment of the U.S.
Constitution.  Petitioner does not seek any monetary damages; rather, his prayer for relief
requests only to enjoin this ongoing violation of federal law.

Respondent RU has filed a Rule 12(b)(1) Motion to Dismiss claiming Petitioner cannot bring suit against it because it has Eleventh Amendment immunity.[1]  Respondents also maintain that the Complaint fails to state a cause of action upon which relief can be granted pursuant to Rule 12(b)(6), primarily based on the premise that Petitioner lacks procedural rights.

The motions should be denied. First, Respondent RU does not have Eleventh Amendment immunity because their acceptance of federal money constitutes a waiver of any immunity and, additionally, the *Ex parte Young* exception applies because Petitioner seeks only prospective, injunctive relief.  Second, Respondents lack any reasonable basis to justify exercising their discretion to conduct the hearing virtually.

Third, Petitioner's legitimate entitlement to due process, including the right to "meaningful" cross-examination, is conferred directly by RU's policies and by the federal regulations applicable to Title IX.  While borne out of constitutional protections afforded criminal defendants, Petitioner's right to confront witnesses at the formal hearing is not directly dependent on the Sixth Amendment.  Fourth, Respondents have failed to safeguard Petitioner's due process rights by abusing their discretion and scheduling the formal hearing to be conducted entirely virtually.

In essence, Petitioner contends and has pled sufficiently that, while Respondents may subjectively believe that they have afforded him an opportunity to be heard along with the right to cross-examine witnesses, RU's decision to conduct the formal hearing entirely virtually, in the absence of any reasonable basis, renders those alleged procedural safeguards wholly inadequate and objectively violative of his constitutional rights.

[1] RU also alleges a potential misnomer in the proceedings and that the Board of Visitors acts for the University.  Nonetheless, RU does not seek to dismiss the action on this basis.  To the extent necessary, Petitioner will be filing the appropriate pleadings to correct the misnomer.

## FACTS

RU is a public, post-secondary education institution that accepts Title IX Funding. Complaint (*hereinafter* "Compl.") at ¶ 11. A female student at RU, Jane Roe (*hereinafter* "Roe"), filed a complaint against Petitioner in November 2022 accusing him of sexually assaulting her in August 2021, in violation of Title IX of the Educational Amendments Act of 1972 (*hereinafter* "Title IX") . *Id.* at 1.  No one, other than Roe and Petitioner, was present when the alleged violation occurred. *Id.* At ¶ 22. As part of the investigation into Roe's complaint, Respondents issued a no contact order prohibiting Petitioner from having any contact with Roe. *Id.* at ¶ 16.

Two witnesses were interviewed during the investigation and their statements contain statements not only inconsistent with each other, but also with Roe's statements.  *Id.* at ¶¶ 23 and 24.  Respondents scheduled a hearing for May 19, 2023, which was to be conducted via Zoom, ostensibly to accommodate the decisionmaker who resides outside of the Commonwealth and would be required to travel to the hearing. *Id.* at ¶ 61.  All other witnesses and parties anticipated to testify are in Radford during the academic year.  *Id.* at ¶ 61.[2]

Should Petitioner be found to have violated RU's sexual harassment policy he faces a myriad of punishments and disciplinary actions including, without limitation, education, disciplinary probation, deferred suspension, suspension, and punitive penalties up to and including dismissal.  *Radford University Policy Number: GEN-PO-1002 §(5)(D)(4)(a)* (*hereinafter*, Radford Policy) effective November 21, 2014, and attached hereto as Petitioner's

---

[2] RU's Fall term begins on August 21, 2023, according to the Academic Calendar on its official website.  **radford.edu**/content/registrar/home/registration-information/academic-calendar.html" (last visited August 8, 2023, at 2:09 p.m.)

Exhibit 1. Finally, it is undisputed that Petitioner is entitled to a "live hearing" with the right to cross-examine witnesses. *34 C.F.R § 106.45(b)(6)(i)*, and *Radford Policy § 5C(9)(b)(viii)(d)*.[3]

**STANDARD OF REVIEW**

**I.    F.R.C.P. 12(b)(1) - Subject Matter Jurisdiction/11th Amendment Immunity**

This Court has articulated the standard for analyzing a Rule 12(b)(1) motion to dismiss in *Doe v. Polytechnic Inst. & State Univ.*, 400 F. Supp.3d 479, 487 (W.D. Va. 2019), *aff'd, Doe v. Va Polytechnic Inst. & State Univ.*, 2023 U.S. App. LEXIS 20476 (4th Cir. 2023). Specifically, district courts are mandated to "view the facts in the light most favorable to the [petitioner], similar to an evaluation pursuant to Rule 12(b)(6)" as set forth in *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). Furthermore, district courts must not dismiss suits unless "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *See, Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Moreover, "[i]n deciding a motion made pursuant to Rule 12(b)(1), the court must ascertain whether "plaintiff's allegations standing alone and taken as true plead jurisdiction and a meritorious cause of action." *Allianz Insurance Co. of Canada v. Cho Yang Shipping Co., Ltd.*, 131 F. Supp. 2d 787, 789 (E.D. Va. 2000) (quoting *Dickey v. Greene*, 729 F.2d 957, 958 (4th Cir. 1984)).

> For motions made pursuant to Federal Rule of Civil Procedure 12(b)(1), the evidentiary standard depends upon whether "the challenge is a facial attack on the sufficiency of the pleadings, or an attack on the factual allegations that support jurisdiction." *Crutchfield v. United States Army Corps of Engineers,* 230 F. Supp.2d 687, 695 (E.D. Va. 2002). If the defendant is attacking the sufficiency of the complaint, the court must accept all of the

---

[3] The next review date for the Policy was set for August 1, 2023. Petitioner is unaware if a review was undertaken and, if so, whether any changes were adopted. Regardless, any such review could not have resulted in a lowering of due process standards afforded expressly in 34 C.F.R. § 106.45(b)(i).

complaint's factual allegations as true. *Id.*; *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 174 F. Supp.2d 388, 391 (D. Md. 2001); *Santiago v. Giant Food, Inc.*, 2001 U.S. Dist. LEXIS 1402, 2001 WL 118628 at *2 (D. Md. Feb. 5, 2001); *Energy Recovery, Inc. v. Hauge*, 133 F. Supp. 2d 814, 816-17 (E.D. Va. 2000). On the other hand, if the defendant claims that the jurisdictional facts alleged in the complaint are untrue, the pleadings are regarded as mere evidence. Id. The court then weighs the pleadings and all of the other evidence to determine whether subject matter jurisdiction exists. Id.

*Allen v. College of William & Mary*, 245 F. Supp. 2d 777, 782-83 (E.D. Va. Jan. 27, 2003).

## II.   F.R.C.P. 12(b)(6) - Failure to State a Claim Upon Which Relief Can be Granted

A Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) ([a] motion to dismiss under Rule 12(b)(6) … does not resolve contests surrounding the facts, the merits of the claim, or the applicability of the defenses."). To be legally sufficient, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Fed. R. Civ. P. 8(a)(2).* A Rule 12(b)(6) motion should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).

When considering a Rule 12(b)(6) motion, the court should accept all well-pleaded allegations as true and should view the complaint in a light most favorable to the plaintiff. *Ostrzenski v. Siegel*, 177 F.3d 245, 251 (4th Cir. 1999); *Mylan Labs., Inc.,* 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Doe v. Citadel*, 2022 U.S. Dist. LEXIS 127707 (S.C. 2022) (*quoting Ashcroft* at 678), *aff'd, Doe v. Citadel*, 2023 U.S. App. LEXIS 14579 (4th Cir. 2023) (Unpublished).

## ARGUMENT

### I. Respondent RU Does Not Have Immunity, This Court has Subject Matter Jurisdiction and the Rule 12(b)(1) Motion to Dismiss Should Be Denied[4]

RU contends that it enjoys Eleventh Amendment immunity protection in this matter. *Memorandum* at 4. RU, however, fails to consider two important undisputed facts. First, RU is the recipient of federal funds. Second, Petitioner seeks only prospective injunctive relief to remedy a current and ongoing violation of federal law (*i.e.*, "ancillary relief") as opposed to an award of monetary damages.

It is undisputed that RU is the recipient of federal funds (*Compl.* at ¶ 11) and, thus, that it waived its Eleventh Amendment immunity when it accepted those funds conditioned expressly on its consent to be sued in Title IX discrimination cases. *Shepard v. Irving*, 77 Fed. Appx. 615, 619 (4th Cor. 2003), *cert. dismissed, Rector & Visitors v. Shepard*, 2004 U.S. LEXIS 4893 (2004) (*citing Litman v. George Mason University*, 186 F.3d 544 (4th Cir. 1999). *See also, Doe*, 400 F. Supp.3d at 469. Accordingly, even if Petitioner was suing for actual monetary damages, RU would not enjoy immunity in this matter.

RU omits entirely the fact that its receipt of federal funds constitutes a waiver of immunity, and cites *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3058, 57 L. Ed.2d

---

[4] It is unclear whether RU has accepted Petitioner's jurisdictional allegations as true or whether they are claiming that the allegations are untrue. It appears that they have accepted the allegations as true for the purpose of the *Allen, supra,* analysis. Regardless, under either analysis, RU enjoys no Eleventh Amendment immunity in this action.

1114, 1116 (1978), in support of its immunity claim. *Memorandum* at 4. *Pugh* is inapplicable to and distinguishable from the present case for one significant reason. Specifically, unlike RU which waived its immunity when it accepted federal funds, neither the state of Alabama nor its Board of Corrections had ever consented, expressly or implicitly, to a waiver of its Eleventh Amendment immunity. *Id.*

Equally inapposite is the Commonwealth's reliance on *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 262 (4th Cir. 2005) for the proposition that RU is the "alter ego" or "an [arm] of the state" of Virginia and, thus, immune from suit. *Md. Stadium Auth.* Involved an attempted removal, pursuant to 28 U.S.C. § 1332, of the University of Maryland's state action seeking monetary damages for breach of contract, negligence, and indemnification. While it is true that the Fourth Circuit did find that the University was an "arm of the state" of Maryland and not a "citizen" of the state for the purposes of diversity jurisdiction, there was no allegation of a violation of federal law and, consequently, no need to consider the *Ex Parte Young* doctrine. In fact, the Fourth Circuit cited with approval its prior decision in *Litman v. George Mason University, supra,* holding that universities accepting federal funding have waived any Eleventh Amendment immunity.

RU does not dispute that it is a recipient of federal education funds. There are no material jurisdictional facts in dispute in this matter. Consequently, this Court must deny RU's Rule 12(b)(1) motion to dismiss. *See, Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (*quoting Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Even if RU did not waive immunity when it accepted federal funds, the Supreme Court has recognized an exception to Eleventh Amendment Immunity which permits federal courts to

issue prospective, injunctive relief to prevent ongoing violations of federal law. *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed.2d 714 (1908); *see also, McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010). The only time that the *Ex parte Young* exception would not be implicated would be if Petitioner were attempting to seek redress for a past injury. In the instant action, Petitioner seeks only entry of an order requiring Respondents to cease violating his due rights by providing him, on whatever future date it may occur, with a live and in-person formal hearing to defend himself. Clearly, under the facts of this case Petitioner is seeking future prospective, injunctive relief. Thus, RU is not immune from this action and this tribunal has jurisdiction to grant the relief requested.

Lastly, even if RU is immune (which it is not), Respondent Zuschin has not moved to dismiss pursuant to Rule 12(b)(1), nor is there valid argument that she is immune from suit pursuant to the Eleventh Amendment.

## II.    Petitioner Has Alleged Facts Sufficient to State a Claim Upon Which Relief Can be Granted

Respondents advance three (3) arguments in their Rule 12(b)(6) motion to dismiss. The standard for a Rule 12(b)(6) motion is "plausibility of entitlement to relief," not the undeniable entitlement to relief. *Francis*, *supra*, 588 F.2d at 193. Petitioner has sufficiently pleaded that he is entitled to relief and the Rule 12(b)(6) motion should be denied. *See Iqbal, supra*, 556 U.S. at 678.

### a.    Respondents Cannot Establish Sufficient Circumstances to Justify their Discretion to Conduct the Hearing Entirely Virtually.

Respondents contend that the regulations promulgated by the U.S. Department of Education ("DOE") permit the use of virtual hearings pursuant to 34 C.F.R. § 106.45(b)(6)(1). *Memorandum* at 4 and 5. They further contend that "because 'sexual misconduct matters

involve sensitive, often traumatic issues for victims of any age' …" they have an interest in "shielding [Roe] from testifying in the presence of [the alleged] perpetrator [Petitioner]" *Id.* at 5.[7]  From this proposition, Respondents then take a fallacious leap – the exception swallowing the rule, and maintain that they have the unfettered authority to conduct the entirety of the hearing virtually.

34 C.F.R. § 106.45(b)(6)(i) states succinctly in the first sentence that "postsecondary institutions … must provide for a live hearing."  The regulation then provides a carve out whereby, upon "request of either party [*i.e.,* Roe or Petitioner], the recipient [RU] must provide for the live hearing to occur with the parties (Roe and Petitioner) in separate rooms with technology enabling the decision-maker(s) and parties (Roe and Petitioner) to simultaneously see and hear the party or the witness answering questions. *34 C.F.R. 106.45(b)(1)(fourth sentence).*[8] Neither party here has requested "for the live hearing to occur with the parties located in separate rooms … ." *Id.*

Absent request by either party, Respondents' authority to conduct the hearing with the parties and witnesses separated from the decisionmaker by hundreds of miles, instead of a wall in another room, must be found elsewhere; because the regulation clearly contemplates that hearings will be conducted live, in-person, and in the same room as the decision maker, unless one of the parties requests otherwise.

---

[7] In arguing that 34 C.F.R. § 106.45(b)(i) vests them with unfettered authority to conduct virtual hearings, Respondents cite only 85 Fed. Reg. 30026 which, essentially, describes the rationale for why the regulation was amended.  They cite no cases interpreting the "actual verbiage" contained in the regulation.

[8] Respondents have failed to present any evidence that Roe has made the request for segregation of the parties.

Respondents rely on a portion of 34 C.F.R. 106.45(b)(6)(i) found several sentences later. Specifically, the regulation states that

> [l]ive hearings pursuant to this paragraph may be conducted with all the parties physically present in the same geographic location or, at the recipient's (RU's) discretion, any or all parties, witnesses, and other participants may appear at the hearing virtually, with technology enabling participants simultaneously to see and hear each other.

*34 C.F.R. § 106.45(b)(6)(i) (second to last sentence)*. Nothing indicates that the basis for this provision is to protect the complainant. Thus, it is incumbent to determine what is meant by DOE's insertion of the term "discretion" into the regulation.

Discretion is not unfettered discretion: discretion of the recipient to conduct a Title IX hearing virtually must have some reasonable basis. *Booth v. Wal-Mart Stores, Inc.*, 201 F.3d 335, 343 (4th Cir. 2000) ("the established standard of judicial review of discretionary decisions for reasonableness"). Convenience of the decisionmaker is not sufficient justification for the hearing to be held virtually, especially when the parties and witnesses are local to the recipient: the fall term at RU is scheduled to begin August 21, 2023. Virtual hearings are not the rule, but the exception. *34 C.F.R. § 106.45(b)(6)(i)*. Moreover, in the absence of a request from either party for the hearing to be conducted in separate rooms, no basis exists to conduct the hearing virtually; certainly no pandemic is ravaging the Radford area dictating virtual measures.

Live, in-person hearings are contemplated by the regulations. *34 C.F.R. § 106.45(b)(6)(i)*. Virtual hearings, therefore, should be the exception to the rule. To deviate from a live, in-person hearing to a virtual hearing there must be some reasonable basis to do so. Here, not reasonable basis exists: surely, Respondents easily can find a decisionmaker locally to sit for the hearing.

> **b.      34 C.F.R. § 106.45(b)(6)(i), as Amended, Specifically Confers Due Process Rights to Petitioner; Additionally, Petitioner has a Property Interest in His Continued Education at Radford University; Finally, Respondents Have Failed to Afford Petitioner His Constitutionally Protected Due Process Right to Meaningful Cross-Examination.**

Respondents maintain that Petitioner lacks the requisite property interest to be entitled to a Fourteenth Amendment right to due process. *Memorandum at 7-8.* All cases cited by Respondents for this proposition, however, fail to sufficiently establish this, and the most relevant case actually supports Petitioner: *Doe v. Alger*, 175 F. Supp.3d 646, 657 (W.D. Va. 2016), relied upon by Respondents, supports Petitioner:

> On a motion to dismiss, this court must take as true all well-pleaded facts in the amended complaint. Here, Doe alleges that, through its policies and practices, JMU has a system of expelling, suspending, or dismissing students only after a finding of cause and that his continued enrollment is therefore a protected property interest. He also relies on the student rights policy. And though it may not itself create enforceable contract rights, it may nevertheless bear on whether he had an entitlement to continued enrollment. Following *Perry* [*v. Sindermann*, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972)], while the court is "not now hold[ing] that [Doe] has any legitimate claim of entitlement to [continued enrollment], 408 U.S. at 602 n.7, it will give him the opportunity to prove the legitimacy of his claim to a property right "in light of the policies and practices of the institution," *id*. at 603.

*Id.*, 175 F. Supp. 3d at 658.

Moreover, Respondents avoid all together a case on which the ink is barely dry out of the Western District, *Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-cv-00378, 2023 U.S. Dist. LEXIS 30717, at *21 (W.D. Va. Feb. 22, 2023):

> The [*Alger*] court relied on that assertion[, *i.e.,* "that, through its policies and practices, JMU has a system of expelling, suspending, or dismissing students only after a finding of cause"], and on the student rights policy, to find that the plaintiff had stated a claim to a property right "'in light of the policies and practices of the institution.'" *Id*. at 658 (*quoting Perry*, 408 U.S. at 603).

While the Court in *Va. Polytechnic Inst. & State Univ* held that the Complaint did not sufficiently allege a property interest, it did so because,

> [Plaintiff] made the same conclusory allegation rejected by the court in *Doe*, 2020 U.S.
> Dist. LEXIS 47754, 2020 WL 1309461 at *6, and *Joseph Doe*, 400 F. Supp. 3d at 500,
> that he has a property interest in continued enrollment arising from his and Virginia
> Tech's agreement based on Virginia Tech's "various policies and customs." Without
> identifying the policy or custom that confers on him the property right in continued
> enrollment, Doe cannot state a claim for deprivation of his right to Due Process.

*Doe v. Va. Polytechnic Inst. & State Univ.*, No. 7:21-cv-00378, 2023 U.S. Dist. LEXIS 30717, at

*21-22 (W.D. Va. Feb. 22, 2023). *Also see Doe v. Va. Polytechnic Inst. & State Univ.*, 400 F.

Supp. 3d 479, 500 (W.D. Va. 2019),

> In *Alger*, the court found that the plaintiff had alleged enough to survive a motion to
> dismiss where the plaintiff alleged that his university had a "system of expelling,
> suspending, or dismissing students only after a finding of cause" and pointed to a
> student's rights policy indicating as much. As in *Perry*, the court in Alger did not hold at
> that time that Doe had "any legitimate claim of entitlement to [continued enrollment],"
> (*quoting Perry*, 408 U.S. at 602 n.7), but it gave him the opportunity to prove the
> legitimacy of his claim to a property right "in light of the policies and practices of the
> institution," *id*. (quoting Perry, 408 U.S. at 603).

In this case, Petitioner has cited to specific RU policies, *i.e.,* Radford University Discrimination

and Harassment Policy (Policy No. GEN-PO-1002) (5)(C)(9)(b)(viii)(e), RU Policy No. SA-PO-

1300(1)(C)(2), Policy No. GEN-PO-1002(5)(D)(1), and Policy No. GEN-PO-1002(1)(B), for his

asserted property interest (*Complaint* at ¶¶ 29 and 30):

> The Policy and other RU policies create a property interest in continued enrollment for
> John whereby RU agreed to permit John to continue as a student and confer a degree
> upon him, and agreed not to discipline him (to include suspension, expulsion, and/or
> dismissal) except upon allegations of misconduct proven true through fair and reasonable
> processes, pursuant to its policies.

*Complaint* at ¶ 30.[9]

Respondents' citation to *M.B. v. McGee*, 3:16cv334, 2017 U.S. Dist. LEXIS 44796, at

*26-27 (E.D. Va. Mar. 24, 2017), also is inapposite: *M.B.* cites to *Alger* merely for the

---

[9] 34 C.F.R. § 106.45(b)(6)(i) also confers rights on Petitioner to a live hearing and cross-examination.

proposition that "'there is no <u>statutory</u> right to be a public [or private] college or university student.'" *Id.* at \*27 (<u>emphasis added</u>), *quoting Alger*, 175 F. Supp. 3d at 660. In this case, Doe has not alleged a statutorily created property interest. *Abbas v. Woleben*, similarly, is not convincing: it predates *Alger*, *Doe v. Va. Polytechnic*, and *M.B.*, is from the Eastern District, and "Abbas [did] not plead any factual allegations to support the existence of a property interest, but merely conclude[d] that a property interest exist[ed]." *Abbas v. Woleben*, No. 3:13CV147, 2013 U.S. Dist. LEXIS 134446, at \*19 (E.D. Va. Sep. 18, 2013). Neither does *Nofsinger* give Respondents sufficient support: it predates *Alger*, *Doe v. Va. Polytechnic*, and *M.B.*, is from the Eastern District, and "The Court finds that Nofsinger's pleadings fail to identify a protected property interest. Nofsinger's conclusory allegation that she 'had a property interest in continued enrollment' in the graduate physical therapy program is not enough; … ." *Nofsinger v. Va. Commonwealth Univ.*, Civil Action No. 3:12-CV-236, 2012 U.S. Dist. LEXIS 97857, at \*18 (E.D. Va. July 13, 2012). Finally, *McCoy v. EVMS* fails: "In this case, McCoy has not alleged the loss of a valid property interest." *McCoy v. E. Va. Med. Sch.*, Civil Action No. 2:11cv494, 2012 U.S. Dist. LEXIS 25777, at \*6 (E.D. Va. Feb. 28, 2012). *McCoy* relies on *Davis v. George Mason Univ.*, 395 F. Supp. 2d 331, 336 (E.D. Va. 2005), which states that,

> Mr. Davis failed to allege in his complaint, or argue in his Opposition to the Motion to Dismiss, that a state created property interest in continued enrollment at a public education institution exists in Virginia. Moreover, when pressed at oral arguments, neither party could cite any Virginia statute or case law that created such a property interest. Without this underlying state created property interest, Plaintiff does not state a claim for violations of procedural or substantive due process.

Respondents also ignore that all the cases they cite pre-date the current Title IX hearing requirements. This oversight is critical because the DOE amended the regulation in 2020 to specifically provide students the due process right of a live hearing and cross-examination in Title IX proceedings. *See Doe v. Stonehill Coll., Inc.*, 2021 U.S. Dist. LEXIS 32958, \*\*15-16

(D. Mass. 2021) ("[e]ffective August 14, 2020, the Department of Education adopted a regulation requiring postsecondary institutions … to provide parties with a live hearing and cross examination" but that, the "new regulation only applies prospectively, not retroactively"). *See also, 34 C.F.R. § 106.45(b)(6)(i)* and *85 Fed. Reg. 30026, 30061, n. 290, 30063, n. 291* (DOE intended to, retroactively, provide both complainants and respondents "equally strong, clear procedural rights during the grievance process"). Therefore, even though some of the cases may have been decided after 2020, the courts were constrained to apply the regulation as it existed prior to its amendment.

In this case, it is undisputed that the incidents of alleged sexual misconduct in the present action occurred no earlier than August of 2021. *Compl. at 1.*  Therefore, in addition to RU policies, the changes to section 106.45(b)(6)(i) provide the independent source such that Petitioner had more than "a unilateral expectation of" or "abstract need for" his due process rights of meaningful cross-examination; rather he had a "legitimate entitlement to" these rights, arising not solely from the Fourteenth Amendment, but additionally, from the regulation itself. *Bd. of Regents v. Roth* 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed.2d 548 (1972) (property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings secure certain benefits and support claims of benefits to those benefits").

The right to a live hearing and to cross-examine witnesses, including the complainant is fatuous if it is not accompanied by a "meaningful" opportunity for his advocate and the decisionmaker to observe, in-person and in the same location, the entire demeanor of the witness including "the language of the entire body [and] […] how the witnesses move when they answer a question; how the witnesses hesitate; how fast the witnesses speak [; … whether] they blink or

roll their eyes, make furtive glances, and tilt their heads […]". *United States v. Clemons*, 2020 U.S. Dist. LEXIS 206221, *7 (D. Md. 2020).  Conducting the hearing virtually will accomplish none of these crucial objectives.  Hence, contrary to Respondents' assertion, they have denied Petitioner his due process right to meaningfully cross-examine all witnesses at the formal hearing and, thus, violated his Fourteenth Amendment rights.

Similarly, RU's decision to conduct the entirety of the formal hearing virtually constitutes an improper infringement on Petitioner's due process right to be heard.  Students subject to punitive action in disciplinary hearings are entitled to notice and a "hearing appropriate to the nature of the case." *Goss v. Lopez*, 419 U.S. 565, 579, 95 S. Ct. 729, 42 L. Ed.2d 725 (1975) (emphasis added).  Courts in the Fourth Circuit have long followed *Goss'* grant of these basic constitutional rights especially when they are subject to serious disciplinary action. *Brown v. Rector & Visitors of the Univ. Of Va.*, 361 Fed. Appx. 531, 532-33 (4th Cir. 2010) (citing *Henson v. Honor Comm. of Univ. of Va.*, 719 F.2d 69, 74 (4th Cir. 1983)).[11]  As it is well settled that Petitioner is entitled to a full and fair hearing, the query then becomes what type of hearing qualifies as "appropriate to the nature of the case" at hand?  *Goss*, 419 U.S. at 579.

Petitioner acknowledges that *Goss*, based on the facts specific to its decision,[12] did not require full-blown trials with the "opportunity to secure counsel [and] to confront and cross-examine witnesses. *Id.* at 583.  Petitioner also concedes that subsequent courts have relied on *Goss* to hold that "something less than a trial-like proceeding" satisfies due process in disciplinary proceedings. *See e.g., Henson*, 719 F.2d at 74 (4th Cir. 1983). In so acknowledging,

---

[11] Petitioner faces punitive penalties such as dismissal should he be found guilty of sexual misconduct.  *Radford Policy, § 5(D)(4)(a)*.
[12] *Goss* involved short, temporary (10-days or less) suspensions of public high school students. *Id.* at 568.

however, Petitioner contends that the 2020 amendments to 34 C.F.R. § 106.45(b)(6)(i) changed dramatically the contours of what comprises a hearing appropriate to the nature of the case.  In augmenting the regulation to allow for an absolute right to cross-examination in the Title IX grievance process, DOE effected a policy change to bring Title IX investigations, inclusive of the formal hearing, more in line with "full-blown" trials.  *See 85 Fed. Reg. 30047-48* (DOE altered § 106.45(b)(1) to avoid abandoning sexual harassment complaints to the criminal justice system).  In short, the inclusion of the right to cross-examination provides a framework whereby recipients must provide "criminal trial-like" procedures to ensure an "adequate, fair and reliable" grievance process for both complainants and respondents and, thus, save recipients from abandoning complaints to the criminal justice system.  If found guilty of sexual misconduct, Petitioner faces dismissal from school suffering severe harm.  *See generally, Doe v. Wake Forest Univ.,* 2023 U.S. Dist. LEXIS 31574, ** 24-25 (M.D.N.C. 2023); *Doe v. Bd. of Trs. of Whitman Coll.*, 2023 U.S. Dist. LEXIS 83094, * 25 (E.D. Wa. 2023).  RU's decision to provide for a virtual hearing frustrates the very purpose supporting the amendment/alteration of the regulations, fails to safeguard Petitioner's Fourteenth Amendment right to meaningful cross-examination and, correspondingly, violates his due process right to be heard.

      c.    **Petitioner's Sixth Amendment Right to Confrontation is Inextricably Intertwined With the Procedural Due Process Rights Afforded Him by the Fourteenth Amendment; Respondents Cannot Impede Those Rights Without Demonstrating a Legitimate "State" Interest; Respondents Have Not Demonstrated a Legitimate Interest Sufficient to Constrict Petitioner's Ability to Confront Witnesses Through Meaningful Cross-Examination**

Respondents argue that the Confrontation Clause of the Sixth Amendment applies only to criminal cases in accord with *Austin v. United States*, 509 U.S. 602, 608, 113 S. Ct. 2801, 125 L. Ed.2d 488 (1993) (holding that Sixth Amendment protections do not apply in forfeiture proceedings). *Memorandum* at 9.  While an accurate recitation of the general law, the interplay

between the protections afforded by the Fourteenth and Sixth Amendments in administrative proceedings is more nuanced.

First, the Sixth Amendment states, in relevant part, "In all criminal prosecutions, the accused shall enjoy the right … to be confronted with the witnesses against him; …" *Sixth Amendment to the Constitution of the United States*. Black's Law Dictionary defines "criminal prosecution," in part, as

> An action or proceeding instituted in a proper court on behalf of the public, for the purpose of securing the conviction and punishment of one accused of crime. A proceeding instituted by the state to obtain punishment against the person charged with and found guilty of a public offense; … .

Black's Law Dictionary, 6th ed. (1990). "Crime" is defined by Black's as, "A positive or negative act in violation of penal law; an offense against the State or United States." "Penal" is defined as "Punishable; inflicting a punishment; containing a penalty, or relating to a penalty" by Black's.

In this case, Doe faces punishment by the government, *i.e.,* the state, for an act in violation of RU policies and/or Title IX regulations. RU policies and/or Title IX regulations impose a penalty on Doe if he is found in violation and, therefore, the policies/regulations are penal in nature. A Title IX proceeding is, for all intents and purposes, a criminal prosecution.

Case precedent analyzing the constitutional protections afforded inmates in disciplinary proceedings is instructive. The U.S. Supreme Court has held that while "[p]rison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply," does not mean that inmates in prison disciplinary hearings "are wholly without the protections of the Constitution ... and may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2693, 41 L. Ed.2d 935 (1974) (citing *Haines v. Kerner*, 404 U.S. 519 (1972); *Wilwording v. Swenson*, 404 U.S. 249 (1971); *Screws v. United States*, 325 U.S. 91 (1945). Additionally, the

dual touchstones of the Sixth Amendment are the importance the judicial system places on not only the need for live testimony, but equally important, the necessity of an objectively adequate opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed.2d 177 (2004) (criminal case).

The Fourth Circuit has had an opportunity to expound on the nuance and interplay between an inmate's Fourteenth and Sixth Amendment rights in *Brown v. Braxton*, 373 F.3d 501 (4th Cir. 2004). In *Brown*, the Fourth Circuit upheld a Virginia regulation providing that hearing officers could require prisoners housed in certain facilities housing "maximum-security" inmates convicted of severe offenses to submit written statements in lieu of live testimony.[14] *Id.* at 504. In so holding, the *Brown* Court adopted a nuanced approach noting that inmates in disciplinary proceedings do not have an absolute right to confront the witnesses against them, but do have a qualified right, subject only to "legitimate penological interests," to mount a defense including the right to call witnesses and present evidence. *Id.* at 505. *Accord, Lennear v. Wilson*, 937 F.3d 257, (4th Cir. 2019) (distinguishing the difference between placing legitimate restraints on due process rights of inmates and eviscerating them entirely). Accordingly, while the staff witnesses were required to be present physically at the hearing, it was not unconstitutional to deny

---

[14] The regulation at issue was Virginia Department of Corrections Division Operating Procedure ("DOP") 861.14(B)(1) which provided that in all disciplinary hearings for certain types of charged offenses:

> [t]he IHO [Inmate Hearing Officer] shall examine each witness' statement for relevance and repetitiveness. A witness' written statement shall not be used in lieu of witness' testimony at a Disciplinary Hearing, except at Level 5 and 6 institutions and segregation units; the statement from a witness is sufficient. Staff witnesses (i.e., additional fact witnesses) requested by the inmate should appear at the Disciplinary Hearing at Level 5 and 6 institutions and in segregation units.

*Brown*, 373 F.3d at 504 (4th Cir. 2004) (emphasis added).

Appellant's request to have a "willing fellow inmate" testify live at the hearing because the state had a legitimate interest in maintaining order and the safety of staff and inmates. *Id.* at 504-05.

Respondents will, undoubtedly, attempt to counter by arguing that they have provided Petitioner with the procedural due process right to have witnesses testify, either in opposition to or in support of, his defense and are providing him with a live hearing; just that these witnesses will do so via Zoom as opposed to physically located in the same room as the decisionmaker. Not only have Respondents failed to assert any legitimate interest served by restricting Petitioner's rights, such a position begs the rhetorical question: is it not meaningless to be vested with the right to have witnesses testify at a hearing if that right is not accompanied by a corresponding, meaningful opportunity to cross-examine those witnesses directly and in the same room? Clearly, the denial of the latter right eviscerates the former one.

As discussed *supra*, Petitioner has a property interest in his continued enrollment at RU and is entitled to due process in the Title IX hearing. Where, as here, the ability of Petitioner to confront the witnesses is inextricably intertwined with his procedural due process rights, the purposes of cross-examination take on greater importance. *Crawford v. Washington*, 541 U.S. 36, 53-44, 124 S. Ct. 1354, 158 L. Ed.2d 177 (2004) (Sixth Amendment Confrontation Clause reflects the importance the judicial system places on live testimony as well as the importance of cross-examination) (criminal case). The "purpose of cross-examination is to ensure that issues of credibility and truthfulness are made clear to the decision makers" and, hence, "constitutes an important safeguard." *See, Doe v. Pa. State supra*, 276 F. Supp. 3d at 309 (M.D. Pa. 2017); *Furey supra*, 884 F. Supp. 2d at 252 (E.D. Pa. 2012). Sister district courts in the Fourth Circuit have found that tribunals must be mindful of safeguarding a person's constitutional rights notwithstanding the emergence of alternative, virtual technology.

> Given that the original public meaning of the Confrontation Clause included, generally, a right to in person, face-to-face confrontation of a witness, it would be inappropriate to deny [Defendant] this right unless a recognized exception to the right justified doing so. This conclusion remains true regardless of how similar video conferencing is to live testimony.  If it cannot preserve the core of the right protected by the Confrontation Clause, it is inadequate.

*United States v. Rivera*, 372 F. Supp. 3d 311, 314-15 (E.D.N.C 2019).

While *Rivera* involved a criminal case and the Sixth Amendment Confrontation Clause specifically, the underlying rationale for the holding is equally applicable to the present matter. Petitioner has alleged, and Respondents have not disputed, that there were no witnesses to the interactions between Roe and Petitioner and that, as such, the credibility of all the witnesses will be paramount. *Compl. a*t ¶¶ 22-24.  To date, and certainly for the purposes of their Rule 12(b)(1) and (b)(6) motions, Respondents have demonstrated neither the legitimate need to curtail Petitioner's constitutional rights nor, alternatively, how the use of a virtual hearing safeguards adequately these rights.

## CONCLUSION

As adequately pled by Petitioner, both Roe and he have vested interests in the underlying formal hearing being conducted fully and fairly.  Roe, to the extent that the facts warrant a finding that Petitioner violated the sexual harassment policy, deserves justice and closure to this unpleasant incident.  Petitioner's procedural due process rights dictate that he receive a full and fair hearing where he can present his defense, including meaningful cross-examination of Roe and the witnesses, because he faces significant punitive action if found to have sexually assaulted Roe. RU does a disservice to both Roe and Petitioner when it requests that it be allowed to merely "dial in" the formal hearing by conducting it entirely virtually. Accordingly, Petitioner respectfully requests that this Court deny Respondents' Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss and award such other relief as is necessary and appropriate.

Respectfully submitted,
JOHN DOE

*/s/ Melvin E. Williams*
Of Counsel

Melvin E. Williams (VSB No. 43305)
    *mel@williamsstrickler.com*
Meghan A. Strickler (VSB No. 88556)
    *meghan@williamsstrickler.com*
WILLIAMS & STRICKLER, PLC
1320 Third Street, SW
Roanoke, Virginia 24016
(540) 266-7800
(540) 206-3857 *facsimile*
    *Counsel for Plaintiff John Doe*

## **CERTIFICATE OF SERVICE**

On this 18th day of August 2023, the foregoing Petitioner John Doe's Memorandum in

Opposition to Respondents' Motion to Dismiss was filed with the Clerk of Court using the

CM/ECF system, which will send a notification of such filing to counsel of record.

*/s/ Melvin E. Williams*
Of Counsel